Gregory R. Preston, Esq.
Preston & Wilkins, LLC
76 South Orange Avenue, Ste. 300
South Orange, New Jersey 07079-1923
212-809-5808
Attorneys for Patricia W. Bennett, M.D.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

PATRICIA W. BENNETT, M.D.,

          Plaintiff,

-against-

CITY OF NEWARK, NEWARK DEPARTMENT
OF HEALTH & COMMUNITY WELLNESS,
NORMA MILANES-ROBERTS, M.D.,
MARK WADE, M.D., AND KETLEN
BAPTISTE-ALSBROOK,

          Defendants.

-------------------------------------------------------------X

CIVIL ACTION NO.

**COMPLAINT AND JURY DEMAND**

Plaintiff Patricia W. Bennett, M.D., by her attorneys Preston & Wilkins, complaining of the Defendant's avers and says:

## JURISDICTION AND VENUE

1. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. sections 1331, 1367, the Age Discrimination in Employment Act ("ADEA"), the New Jersey Law Against Discrimination ("NJLAD"), the Conscientious Employee Protective Act ("CEPA"), and the Common Law.

2. The unlawful employment practices alleged in this Complaint took place in Newark, New Jersey in the District of New Jersey.

## PARTIES

3. Plaintiff Patricia W. Bennett, M.D. is a 66-year-old female, resident of the State of New Jersey, and Doctor of Podiatry.

4. Defendant City of Newark ("Newark") is a municipal corporation and at all relevant times mentioned herein was Plaintiff's employer.

5. Defendant Newark Department of Health & Community Wellness ("NDH") is a corporation and at all relevant times mentioned herein was Plaintiff's employer.

6. Newark is an "employer" with the meaning of ADEA, the NJLAD, and CEPA. Upon information and belief, Newark has more than five hundred (500) employees.

7. NDH is an "employer" with the meaning of ADEA, the NJLAD, and CEPA. Upon information and belief, Newark has more than five hundred (500) employees.

8. Defendant Dr. Norma Milanes-Roberts was employed by Newark and NDH and was Plaintiff's supervisor, within the meaning of the ADEA, NJLAD, and CEPA.

9. Defendant Dr. Mark Wade was employed by Newark and NDH and was Plaintiff's supervisor, within the meaning of the ADEA, NJLAD, and CEPA.

10. Defendant Ketlen Baptiste-Alsbrook was employed by Newark and NDH and was Plaintiff's supervisor, within the meaning of the ADEA, NJLAD, and CEPA.

## ADMINISTRATIVE PROCEDURES

11. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Newark and NDH, alleging that Newark and NDH discriminated against Plaintiff due to her age and in retaliation for raising questions about Defendant's billing practices.

12. On or about September 3, 2019, Plaintiff was served a Notice of Right to Sue from the EEOC.

13. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## FACTUAL ALLEGATIONS

14. Plaintiff was employed as a Podiatrist at NDH from on or about July 2015 until her termination on or about November 13, 2018.

15. When Dr. Bennett was hired at the NDH, there had been no Podiatry practice there for several years.

16. Dr. Bennett had to set up the entire Podiatry practice at NDH.

17. Dr. Bennett established the protocols and procedures of the Podiatry practice at NDH.

2

18. At the height of the practice, Dr. Bennett was seeing 80-90 patients per month.

19. Upon information and belief, Dr. Bennett never received or had patients file a complaint against her at the NDH.

20. Dr. Bennett was clearly qualified for the position and always received good performance evaluations.

21. Dr. Milanes-Roberts was hired by the NDH and started as Acting Medical Director on or about October 1, 2018.

22. Dr. Milanes-Roberts first met Plaintiff on or about October 16, 2018, and from that day, Dr. Milanes-Roberts began to call Plaintiff after hours at night (after 7:00 p.m.) when she rarely spoke to Plaintiff during the day.

23. Dr. Milanes-Roberts harassed Plaintiff daily.

24. As Plaintiff entered her office daily, Plaintiff was summoned to Dr. Milanes-Roberts office for one reason or the other.

25. Dr. Milanes-Roberts began to interrogate Plaintiff about her work without ever referring to or showing her Podiatric Policies and Procedures for the NDH.

26. In October 2018, for some yet unexplained reason, Dr. Milanes-Roberts cancelled all patient appointments scheduled with Dr. Bennett from October 2018 through February 2019.

27. Plaintiff was isolated from other providers and not included in meetings.

28. Plaintiff sat in her office for full 6.5-hour days without work or staff interaction.

29. On one occasion, Plaintiff was made to wait hours after her 6.5-hour day was completed for Dr. Milanes-Roberts to sign papers for her to leave.

30. Dr. Milanes-Roberts never signed the document for Plaintiff to leave (never answered Plaintiff's email), and Plaintiff was never paid for the extra hours she was required to work.

31. On November 7, 2018, Plaintiff was written up for insubordination and incompetence (for leaving work at 4:30 p.m. and not staying at night to meet with Dr. Milanes-Roberts), and terminated on November 9, 2018.

32. Within two weeks of Plaintiff's termination, Plaintiff's job was posted on the internet seeking a Podiatrist with substantially less experience than Dr. Bennett (one-year vs Plaintiff's 26 years of experience).

33. Plaintiff believes she was targeted for her age and therefore terminated to be replaced with someone substantially younger.

34. Plaintiff was never given due process and no corrective measures were instituted by Dr. Milanes-Roberts or Dr. Mark Wade, Director of NDH.

35. Plaintiff also believes that she was terminated as a form of retaliation because she raised significant questions about the legality of NDH's medical billing practices.

36. To Plaintiff's knowledge, similarly situated employees were not subject to the same treatment, disciplined, belittled or terminated.

37. Based on the above, Plaintiff believes she has been discriminated against on basis of her age and in retaliation, in violation of the Age Discrimination in Employment Act of 1967, as amended, NJLAD and CEPA.

## FIRST COUNT (ADEA)

38. Plaintiff repeats and realleges averments of paragraphs 1 through 37 herein.

39. Plaintiff has a *prima facie* case of discrimination under the ADEA.

40. Plaintiff Dr. Bennett is a member of a protected class and was qualified for her position as a Podiatrist at NDH.

41. She was belittled, subject to disparate treatment and terminated, while similarly situated employees were not subject to the same treatment.

42. Additionally, Newark and NDH sought to replace Dr. Bennett with an individual who was not in the protected class.

43. The effect of the discriminatory practices complained of has been to deprive Dr. Bennett of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

44. The unlawful employment practices complained were intentional, done with malice and with reckless indifference to the federally protected rights of Dr. Bennett.

45. By reason of the foregoing, Defendant Newark and NDH have deprived Plaintiff Dr. Bennett with certain benefits, privileges, terms and conditions of employment, in violation of ADEA by discriminating against Plaintiff because of her age.

46. By reason of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and injury.

## SECOND COUNT (NJLAD)

47. Plaintiff repeats and realleges the averments of paragraphs 1 through 46 herein.

48. Plaintiff has a *prima facie* case of discrimination under the NJLAD.

49. Plaintiff Dr. Bennett is a member of a protected class and was qualified for her position as a Podiatrist at NDH.

50. She was belittled, subject to disparate treatment and terminated, while similarly situated employees were not subject to the same treatment.

51. Additionally, Newark and NDH sought to replace Dr. Bennett with an individual who was not in the protected class.

52. The effect of the discriminatory practices complained of has been to deprive Dr. Bennett of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

53. The unlawful employment practices complained were intentional, done with malice and with reckless indifference to rights of Dr. Bennett under the NJLAD.

54. By reason of the foregoing, Defendant Newark and NDH have deprived Plaintiff Dr. Bennett with certain benefits, privileges, terms, and conditions of employment, in violation of NJLAD by discriminating against Plaintiff because of her age.

55. By reason of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and injury.

## THIRD COUNT (AID AND ABETTING DISCRIMINATION)

56. Plaintiff repeats and realleges the averments of paragraphs 1 through 55 herein.

57. Defendant Milanes-Roberts aided and abetted Defendant Newark and NDH's discrimination, disparate treatment and violation of Dr. Bennett's rights under the NJLAD.

58. Defendant Milanes-Roberts is liable as an aider or abettor of discrimination because she discriminated against Dr. Bennett due to her age; she was aware that Dr. Bennett was being discriminated against because of her age and assisted in the discrimination; and/or she knowingly and substantially assisted in the discrimination against Dr. Bennett due to Dr. Bennett's age.

59. Defendant Dr. Wade aided and abetted Defendant Newark and NDH's discrimination, disparate treatment and violation of Dr. Bennett's rights under the NJLAD.

60. Defendant Dr. Wade is liable as an aider or abettor of discrimination because he discriminated against Dr. Bennett due to her age; he was aware that Dr. Bennett was being discriminated against because of her age and assisted in the discrimination; and/or he knowingly and substantially assisted in the discrimination against Dr. Bennett due to Dr. Bennett's age.

61. Defendant Baptiste-Alsbrook aided and abetted Defendant Newark and NDH's discrimination, disparate treatment and violation of Dr. Bennett's rights under the NJLAD.

62. Defendant Baptiste-Alsbrook is liable as an aider or abettor of discrimination because she discriminated against Dr. Bennett due to her age; she was aware that Dr. Bennett was being discriminated against because of her age and assisted in the discrimination; and/or she knowingly and substantially assisted in the discrimination against Dr. Bennett due to Dr. Bennett's age.

63. As a result of the foregoing, Defendants Milanes-Roberts, Wade, and Baptiste-Alsbrook are individually liable to Dr. Bennett for the discrimination and the injuries caused to Dr. Bennett.

## FOURTH COUNT (CEPA)

64. Plaintiff repeats and realleges the averments of paragraphs 1 through 63 herein.

65. Plaintiff reasonably believed that Newark and NDH's billing practices were a violation of a law, rule, regulation or clear mandate of public policy.

66. Plaintiff engaged in a whistleblowing activity when she raised concerns about Defendants billing practices.

67. As a result of her whistleblowing activity, Plaintiff was subject to adverse employment actions, which includes and lead to her termination, which was in violation of CEPA.

68. As a result of the foregoing, Defendants Milanes-Roberts, Wade, Baptiste-Alsbrook, Newark, and NDH are liable to Dr. Bennett for the injuries caused to Dr. Bennett.

**WHEREFORE**, the Plaintiff prays that this Court enter judgment on behalf of Plaintiff:

    a.    Declaring that the Defendants have violated the ADEA NJLAD and CEPA;

    b.    For compensatory and consequential damages;

    c.    For punitive damages;

    d.    For Attorney's fees; and

    e.    For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by a jury.

Dated:    November 27, 2019
           South Orange, New Jersey

*/s/ Gregory R. Preston*
Gregory R. Preston (GP6138)