UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA W. BENNETT, M.D., <br><br> **Plaintiff,** <br><br> v. <br><br> CITY OF NEWARK, *et al.*, <br><br> **Defendants.** | 19-cv-20878 <br><br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Dr. Patricia W. Bennett ("Bennett") brings this action for age discrimination and retaliation, in violation of various state and federal laws. The matter comes before the Court on Defendants Dr. Norma Milanes-Roberts ("Milanes-Roberts") and Ms. Ketlen Baptiste-Alsbrook's ("Baptiste-Alsbrook") motions to dismiss. ECF Nos. 7 ("Milanes-Roberts Motion") & 17 ("Baptiste-Alsbrook Motion"). Also before the Court is Bennett's motion to amend. ECF No. 22 ("Bennett Motion"). For the reasons set forth below, the motions to dismiss are **GRANTED IN PART** and **DENIED IN PART,** the motion to amend is **DENIED**, but the Court grants **LEAVE TO AMEND**.

I.   BACKGROUND[1]

Bennett worked as a podiatrist for the Newark Department of Health ("NDH") from July 2015 until November 2018. Compl. ¶ 14. Bennett alleges that after NDH hired Milanes-Roberts as Acting Medical Director in October 2018, she began harassing Bennett. *Id.* ¶¶ 21-23. Milanes-Roberts allegedly canceled all of Bennett's appointments without explanation and isolated her from office staff. *Id.* ¶¶ 26-28. Bennett "was written up for insubordination and incompetence (for leaving work at 4:30 p.m. and not staying at night to meet with Dr. Milanes-Roberts) and terminated on November 9, 2018." *Id.* ¶ 31. Bennett believes she was targeted due to her age and terminated in retaliation for raising questions about the legality of NDH's billing practices. *Id.* ¶¶ 33, 35. Shortly after her termination, NDH began advertising a podiatrist opening, requiring only one-year of specialized experience. *Id.* ¶ 32.

Bennett filed an EEOC complaint and received a right to sue letter on September 3, 2019. *Id.* ¶¶ 11-12. She filed her complaint on November 27.[2] The Complaint alleges violations of the Age Discrimination in Employment Act ("ADEA") (Count 1); the New Jersey Law Against Discrimination ("LAD") (Count 2); aiding and abetting liability (Count

---

[1] The following facts, taken from the Complaint, are accepted as true for the purposes of this Opinion.

[2] Milanes-Roberts argues the Complaint was not filed within the requisite 90 day period. However, Milanes-Roberts appears to have confused the filing date with the date of service.

1

3); and violations of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count 4).

## II. DISCUSSION

A complaint survives a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the Plaintiff states a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). But courts do not accept "legal conclusions" as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### A. **Milanes-Roberts Motion**

Milanes-Roberts argues (1) she cannot be liable as an aider or abettor because Plaintiff cannot demonstrate primary liability by NDH or the City of Newark under NJLAD and (2) Bennett fails to allege sufficient facts to make out a CEPA violation.

With respect to aider and abettor liability (Count 3), the Complaint alleges sufficient facts to establish a *prima facia* claim. With the benefit of all reasonable inferences, the Complaint alleges that Bennett is a member of a protected class (age); that she was performing her job; that she suffered an adverse employment action (termination); and others were not subject to such action. *See* Compl. ¶¶ 18-19 (performing job); 31 (termination); 32 (job posting requiring one year of ambulatory care); 33 (targeted for age); 36 (similarly situated employees not subject to same treatment). Accordingly, Bennett sufficiently alleges a *prima facia* claim. *See El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 167–68, 887 A.2d 1170, 1183 (App. Div. 2005) (requiring (1) membership in protected class; (2) performance of job; (3) adverse employment action; and (4) disparate treatment). As Milanes-Roberts herself was the primary alleged perpetrator, she may be liable as an aider and abettor. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999) (abrogated in other respects) (finding supervisor's "duty can be violated by deliberate indifference or affirmatively harassing acts.").[3]

Milanes-Roberts is correct that the Complaint fails to adequately state a CEPA claim. CEPA claims require (1) reasonable belief that the employer's conduct violated a law, rule, regulation, or clear mandate of public policy, (2) that the plaintiff performed a "whistle-

---

[3] The various documents attached to Milanes-Roberts motion do not permit a contrary result. Some are considerable by the Court. *See Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (permitting review of documents "integral to or explicitly relied upon in the complaint"). But even considering the documents, Bennett's factual allegations still plausibly state a claim. *See Twombly*, 550 U.S. at 547. At the summary judgment stage, Bennett's ability to set forth sufficient evidence will be tested.

2

blowing" activity; (3) that an adverse employment action was taken; and (4) causation. *Dzwonar v. McDevitt*, 177 N.J. 451, 462, 828 A.2d 893, 900 (2003).

The allegations in Bennett's CEPA claim are that (1) she believed NDH's billing practices were illegal; (2) she "raised concerns" about such practices; and as a result, and (3) she suffered an adverse employment action. Compl. ¶¶ 35, 65-67. Bennett fails to articulate what the wrongful billing practices were, who engaged in them and when, who she complained to, what she said (i.e., whether she performed a "whistle-blowing" function), or when. While exact details are unnecessary, Bennett must offer something more than legal conclusions disguised as facts or threadbare recitals of elements. *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc). She fails to do so. Accordingly, Milanes-Roberts's motion to dismiss, ECF No. 7, is **GRANTED IN PART** and **DENIED IN PART**.

### B. Baptiste-Alsbrook Motion

Baptiste-Alsbrook moves to dismiss because (1) there are no facts which reference her taking any disciplinary or retaliatory actions; (2) Bennett cannot prove Baptiste-Alsbrook "aided and abetted" any discrimination; and (3) Baptiste-Alsbrook's did not cause any adverse employment actions.[4] Baptiste-Alsbrook also joins in Milanes-Roberts's arguments. Baptiste-Alsbrook Mot. at 12. Thus, for the same reasons discussed above, Bennett's CEPA claim (Count 4) against Baptiste-Alsbrook is **DISMISSED**. *See supra* Part II.A.

The Court also agrees that the Complaint does not allege sufficient facts to state a ADEA or NJLAD claim against Baptiste-Alsbrook (Count 3). To be individually liable:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921, 929 (2004).

The Complaint barely mentions Baptiste-Alsbrook, and the only allegations are mere legal conclusions. *See* Compl. 61-62; *Morrow*, 719 F.3d at 165 (finding courts need not accept legal conclusions couched as facts). There is no factual basis to conclude Baptiste-Alsbrook was "generally aware of [her] role as part of an overall illegal or tortious activity at the time." *Tarr*, 181 N.J. at 84. Thus, the Complaint does not sufficiently allege that Baptiste-Alsbrook aided and abetted in any discrimination. Accordingly, Baptiste-Alsbrooks's Motion to Dismiss, ECF No. 17, is **GRANTED**, except as to prejudice (discussed below).

### C. Motion to Amend

Bennett's Proposed Amended Complaint ("PAC") adds a few additional details regarding Baptise-Alsbrook's role in the alleged discrimination as well as Bennett's alleged

---

[4] Baptiste-Alsbrook also argues Bennett failed to provide notice under the New Jersey Tort Claims Act. But the Tort Claims Act's notice requirements do not apply. *Brennan v. Norton*, 350 F.3d 399, 431 (3d Cir. 2003) (CEPA); *Fuchilla v. Layman*, 109 N.J. 319, 331 (1988) (NJLAD and federal law).

3

whistleblower activity. PAC, ECF No. 21-3. Bennett also seeks to add a claim for retaliation in violation of a public mandate (Count 5). *Id.* ¶¶ 78-81.

Generally, amendment is permitted absent "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, [or] futility of amendment." *Great W. Mining & Mineral Co. v. Fox Rothschild*, 615 F.3d 159, 174 (3d Cir. 2010). "To evaluate futility, [courts] apply the same standard of legal sufficiency as would be applied to a motion to dismiss under Rule 12(b)(6)." *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (citation omitted).

Here, permitting amendment would be futile. While Bennett newly alleges that "Baptiste-Alsbrook issued Dr. Bennett a Preliminary Notice of Disciplinary Action," PAC ¶ 33, the PAC does not include any factual basis to conclude that Baptiste-Alsbrook was "generally aware of [her] role as part of an overall illegal or tortious activity at the time." *Tarr*, 181 N.J. at 84 (listing elements). Thus, permitting Bennett to file the PAC would be futile as to aiding-and-abetting liability against Baptiste-Alsbrook (Count 3).

Similarly, the whistleblower claims (Counts 4-5) do not contain enough facts to pass muster. While Bennett specifies that she raised concerns regarding Defendants' Explanation of Benefits forms, she only includes vague allegations of misconduct and retaliation. *See* PAC ¶¶ 70-74. While precise details are unnecessary, without including who she made such demands on, when, or what the alleged "irregularities associated with claims processing" were, Plaintiff fails FRCP 8(a)'s pleading requirements. *See Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (finding FRCP 8 requires that "a pleading identifies discrete defendants and the actions taken by these defendants in regard to the plaintiff's claims"); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (sufficiency is "context-dependent.").

Because the defects in the above-dismissed claims are not remedied by the PAC, filing the PAC would be futile. Thus, Bennett's motion to amend, ECF No. 22, is **DENIED**. However, additional specificity could result in viable whistleblower claims (Counts 4-5), as well as aiding-and-abetting liability for Baptiste-Alsbrook (Count 3). Further, Bennett has not previously amended her complaint, despite her right to do so. *See* FRCP 15(a)(1)(A). Accordingly, the Court will grant Bennett **LEAVE TO AMEND** to file an amended complaint remedying the issues raised in this Opinion. Failure to do so may result in denial of future opportunities to amend. *See Great W. Mining & Mineral Co.*, 615 F.3d at 174 (permitting amendment absent, *inter alia*, "repeated failure to cure deficiencies").

Date: August 3, 2020

WILLIAM J. MARTINI, U.S.D.J.