UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA W. BENNETT, M.D.,<br><br>    **Plaintiff,**<br><br>v.<br><br>CITY of NEWARK, NORMA MILANES-ROBERTS, M.D., and MARK WADE, M.D.,<br><br>    **Defendants.** | Civil Action No.:<br>2:19-CV-20878-WJM<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Dr. Patricia W. Bennett ("Dr. Bennett" or "Plaintiff") brings this action for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"). This matter comes before the Court upon the City of Newark ("City"), Dr. Mark Wade ("Dr. Wade"), and Dr. Norma Milanes-Roberts' ("Dr. Roberts" and collectively with the City and Dr. Wade "Defendants") Motion for Summary Judgment (the "Motion") pursuant to Federal Rule of Civil Procedure 56. ECF No. 87. The Court decides the matters without oral argument. *See* Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' Motion is **GRANTED**.

## I. BACKGROUND[1]
### A. Facts

Plaintiff worked as a part-time podiatrist for the City in the Newark Department of Health and Community Wellness ("NDH") from July 2015 until November 2018. *See* DSOMF at ¶ 1. During the relevant time, Dr. Roberts served as the Acting Medical Director of the NDH and directly supervised Plaintiff. *Id.* at ¶ 2. Dr. Wade was employed by the City as NDH Department Director and was the ultimate supervisor of both Dr. Roberts and Plaintiff. *Id.* at ¶ 3. On October 17, 2018, Dr. Roberts observed Harriet Boston ("Boston"), then NDH Chief Medical Assistant and Dr. Bennett's assistant that day cleaning rusted instruments, such as a pair of surgical scissors and toenail clippers. Although Boston denied during her deposition cleaning rusty instruments or observing Dr. Bennett using rusty

---

[1] The facts in this section are taken from the parties' statements of material facts and the exhibits attached thereto. Favorable inferences are given to the non-moving party. For ease of reference, the Court will use the following abbreviations to refer to documents in the record:

    "**DSOMF**" – Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 87-1)

    "**PRDSOMF**" – Plaintiff's Response to Defendants' Statement of Material Facts (ECF No. 87-4)

instruments on patients, she did admit to cleaning the only instruments that were used in the podiatry unit on October 17, 2018 where Plaintiff worked, a photograph of which was taken by Dr. Roberts. *See* Rachel E. Simon Certification Ex. E, ECF No. 87-2. The photographs clearly show a rusted pair of surgical scissors and toenail clippers. *Id.* Boston was placing the instruments inside of a stainless-steel basin labeled "clean instruments" where Plaintiff typically kept her tools. *See* DSOMF at ¶ 4; PRDSOMF at ¶ 4. Dr. Roberts later confronted the Plaintiff about her use of the instruments and Plaintiff subsequently denied ever using rusty instruments on her patients. *See* DSOMF at ¶ 6; PRDSOMF at ¶ 6. Dr. Roberts then drafted an initial recommendation for a preliminary notice of disciplinary action ("PNDA") to Dr. Wade and Irene Fryer, head of NDH's human resources. *See* DSOMF at ¶ 7. The notice listed incompetence, inefficiency or failure to perform duties, insubordination, and conduct unbecoming a public employee as the causes of the disciplinary action. *Id.* The recommendation read "Dr. Bennett failed to realize or even acknowledge the use of the instruments she was using in the conditions they were [in] was not appropriate; and not in accordance with the standards of practice. The level of rust noted in some of the instruments represented a significant risk to the patients and also to the staff using/preparing them to be used on our patients." DSOMF at ¶ 8; Simon Cert., Ex. F.

On October 18, 2018, Fryer responded to Dr. Roberts' email stating "I will have Dr. Wade review to see [if] he wants to add anything prior to sending to the [City Personnel] Director for authorization to proceed with the PNDA." DSOMF at ¶ 9; Simon Certification, Ex. H. Upon receiving the recommendation and photographs of the instruments, Dr. Wade reviewed the documents with City Personnel Director Keisha Daniels, City Business Administrator Eric Pennington, and Mayor Ras Baraka. *Id.* at ¶ 10. Dr. Wade then recommended Plaintiff's immediate termination, which Pennington and Baraka agreed. *Id.*; Simon Cert., Ex. D. On November 7, 2018, Plaintiff received a PNDA from Keisha Daniels signed by Plaintiff's ultimate supervisor, Dr. Wade. *Id.* at ¶ 11. The PNDA listed incompetency, insubordination, conduct unbecoming a public employee, and neglect of duty in violation of N.J.A.C. 4A:2-2 3(a). *Id.* Although Plaintiff maintains that she did not use rusted instruments on patients, pictures of rusted instruments were attached to the PNDA presented to her. *Id.* at ¶ 12; PRDSOMF at ¶ 12. On November 9, 2018, Plaintiff received a letter from Dr. Wade and Mayor Baraka stating that her "services as Podiatrist for the Department of Health and Community Wellness, Division of Medical Care Services, are no longer required" and her termination was effective immediately. DSOMF at ¶ 13. At the time of her termination, Plaintiff was 66 years old. Sometime after Plaintiff's termination, the City posted an advertisement for a part-time Podiatrist requiring at least one year of experience in ambulatory care. *Id.* at ¶ 15; Simon Cert., Ex. K. As of December 21, 2021, the date of Dr. Wade's deposition, Plaintiff's position has not been filled because the applicants allegedly lacked appropriate ambulatory care experience. *Id.* at ¶ 16; PRDSOMF at ¶ 16; Simon Cert., Ex. D.

**B. Procedural Background**

On February 4, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and retaliation in violation of the ADEA. *See* DSOMF at ¶ 17; Simon Cert., Ex. L. On September 3, 2019, the EEOC sent Plaintiff a Dismissal and Notice of Rights letter advising her that it was unable to conclude a violation of federal statutes and notifying her of the 90-day deadline in which to file her claims. *Id.* at ¶ 18; Simon Cert., Ex. M. Plaintiff filed her complaint on November 11, 2019 alleging age discrimination in violation of the ADEA, the NJLAD, and the Conscientious Employee Protective Act ("CEPA") against all of the Defendants in this action as well as Ketlen Baptiste-Alsbrook. *See* ECF No. 1. On April 23, 2020 and May 21, 2020, Defendants and Baptiste-Alsbrook filed motions to dismiss the complaint. *See* ECF Nos. 7, 17. On August 3, 2020, this Court granted in part and denied in part the motion, dismissing the CEPA claim as to all Defendants and all claims against Baptiste-Alsbrook. *See* ECF Nos. 27, 28, 60. A motion for leave to amend the complaint was filed on June 9, 2022, and was subsequently denied by Magistrate Judge Espinosa on October 19, 2022. *See* ECF Nos. 71, 74. An appeal to this Court was filed for leave to amend on November 17, 2022, and was similarly denied March 14, 2023. *See* ECF Nos. 77, 83. Defendants moved for summary judgment, and all of the parties submitted their briefings jointly on November 1, 2023. *See* ECF No. 87. The remaining three claims are as follows. Count One alleges Defendant City of Newark violated the ADEA by discriminating against Plaintiff due to her age. *See* Complaint at ¶¶ 38-46, ECF No. 1. Specifically, Plaintiff was belittled, subject to disparate treatment and terminated, and Defendants sought to replace Plaintiff "with an individual who was not in the protected class." *Id.* at ¶¶ 41, 42. Count Two alleges Defendant City of Newark violated the NJLAD by discriminating against Plaintiff due to her age. *Id.* at ¶¶ 47-55. Finally, Count Three alleges that Defendants Dr. Wade and Dr. Roberts aided and abetted Defendant City of Newark in discriminating against Plaintiff due to her age in violation of the NJLAD. *Id.* at ¶¶ 56-63.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court construes all facts and inferences in the light most favorable to the non-moving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). However, the Court may not make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts at this stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact—that is, the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a 'genuine issue for trial' and do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *United*

3

*States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

## III. DISCUSSION
### A. Age Discrimination Under the ADEA and NJLAD

Defendants argue that summary judgment should be granted for Counts One and Two because Plaintiff has failed to establish a prima facie ADEA claim and NJLAD claim based on age discrimination. Specifically, Defendants argue Plaintiff cannot demonstrate her termination was because of her age or that age played a role in the employment decision-making process as there is no evidence that "Plaintiff's age was even a remote or marginal consideration in her termination." Instead, Plaintiff was terminated based on her supervisors' belief that she was using rusty instruments on patients, which was the basis for her PNDA. Plaintiff's reliance on the City's online advertisement for a replacement podiatrist requiring "[o]ne (1) year of experience in ambulatory care" is misplaced, Defendants argue, because experience is not a proxy for age and the city could have hired someone with substantially more than one year of ambulatory care experience. In response, Plaintiff argues that she established a prima facie case because there is conflicting testimony regarding the alleged use of rusty instruments on patients and after terminating Plaintiff, Defendants sought another podiatrist with only one year of experience. Furthermore, since Defendants have "offered no explanation of the conflicting testimony of Defendants Dr. Roberts and Harriet Boston" regarding the use of rusty instruments, Plaintiff has met her burden of establishing a prima facie case. Defendants reply contending the alleged inconsistent testimony regarding the use of rusty instruments is misplaced. Dr. Roberts discussed with Boston whether she was cleaning the same instruments Plaintiff had used that day, which Boston confirmed in her deposition. Furthermore, Plaintiff's argument that the City's job posting for someone with one year of experience indicates Defendants sought to replace her with someone younger fails because experience is not a factual proxy for age nor did the job posting prevent the City from hiring someone with the same or more years of experience as Plaintiff.

The ADEA "prohibits age discrimination in employment decisions against persons who are at least 40 years of age." *Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). To prevail on an ADEA claim, "a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002). Under the ADEA, employers are prohibited from discriminating against individuals in hiring, termination,

4

compensation, or conditions of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1).

Because Plaintiff has not provided direct evidence of discrimination, the Court will apply the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to Plaintiff's age discrimination claims under the ADEA and NJLAD. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (affirming that we apply *McDonnell Douglas* in ADEA cases involving indirect evidence); *Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (N.J. 1999) (applying *McDonnell Douglas* to NJLAD cases involving indirect evidence).

To survive a motion for summary judgment under this framework, a plaintiff must first establish a prima facie case of age discrimination. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). The elements of a prima facie case of age discrimination are: (1) the plaintiff is over 40 years of age; (2) the plaintiff is qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of job discrimination. *See Keller*, 130 F.3d at 1108. Where the plaintiff is not directly replaced, "the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999)). Once the plaintiff has established a prima facie case of age discrimination, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992). The plaintiff then has the burden to provide sufficient evidence from which a factfinder could reasonably either (1) reject the employer's nondiscriminatory explanation for its decision, or (2) believe that an invidious discriminatory reason was more likely than not a motivating cause of the employee's discharge. *Fuentes v. Perskie*, 32 F.3d 759, 763-64 (3d Cir. 1994).

Defendants stipulate that Plaintiff has satisfied the first three prongs of the prima facie case but claims that Plaintiff failed to establish the fourth prong. Defendants did not hire a new employee to replace Plaintiff. Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999). Plaintiff is unable to point to any such facts. The bulk of Plaintiff's briefings fixate on the issue of whether or not she actually used rusty instruments on patients and references allegedly conflicting testimony illuminating such. The Plaintiff does not, however, provide facts that show Plaintiff's termination was more likely than not based on the consideration of *impermissible* factors. Plaintiff makes a passing reference to Defendants seeking to hire someone with one year of experience in support of impermissible factors being considered. The amount of experience one has is not a proxy for age and the job posting did not prevent the City from

hiring someone with the same or more years of experience as Plaintiff. Therefore, Plaintiff is unable to show her termination was more likely than not based on impermissible factors. Furthermore, Defendants' have provided sufficient explanation for the alleged inconsistent testimony that Plaintiff points to as "otherwise unexplained." Although Boston did testify to never seeing Plaintiff use rusty instruments on patients, Boston also testified to cleaning the only instruments that were used in podiatry the day Plaintiff was working. *See* Def. Mot. Ex. G. at 24:17-25:7. Dr. Roberts photographed those instruments, which clearly depict rust. *Id.* at Ex. E. Plaintiff has failed to make a prima facie case of age discrimination.

Even assuming arguendo that Plaintiff made the prima facie showing for age discrimination, she cannot survive summary judgment due to her failure to sufficiently cast doubt on Defendants' stated reasons for termination. Defendants have presented a legitimate, non-discriminatory basis for the termination of Plaintiff's employment, namely that Plaintiff used rusty instruments on patients. Since Defendants presented valid, nondiscriminatory reasons for the termination, Plaintiff was obligated to present evidence from which a reasonable factfinder could conclude that Defendants' articulated reasons were false, or that discrimination was more likely than not a motivating cause of Defendants' actions. *Fuentes*, 32 F.3d at 764. Specifically, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (quotations omitted).

Plaintiff claims Boston and Dr. Roberts' testimony are in conflict which therefore suggests that "Dr. Roberts fabricated that [Plaintiff] was using rusty instruments on her patients." Pl. Opp. at 6. As addressed above, Defendants never claim Boston stated that Plaintiff used rusty instruments on patients. Instead, Dr. Roberts and Boston discussed whether Boston was cleaning the same instruments Plaintiff used that day. Dr. Roberts then observed and took photographs of rusted instruments inside a basin labeled "clean instruments" and Boston confirmed that basin contained the tools Plaintiff used on patients that day. Based on this Dr. Roberts reasonably concluded Plaintiff used rusted instruments on her patients. Plaintiff has therefore failed to provide sufficient evidence from which a factfinder could reasonably reject Defendants' nondiscriminatory explanation for its decision or believe that an invidious discriminatory reason was more likely than not a motivating cause of the employee's discharge. Plaintiff's claims of age discrimination are mere conjecture or are not supported by evidence. Therefore, Defendants' Motion for Summary Judgment with respect to Count One and Count Two is **GRANTED**.

### B. Aiding and Abetting

Plaintiff's remaining claim under Count Three alleges that Defendants Dr. Wade and Dr. Roberts aided and abetted Defendant City of Newark in discriminating against Plaintiff due to her age in violation of the NJLAD. Compl. at ¶¶ 56-63. The NJLAD imposes individual liability on "any person, whether an employer or an employee or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this act," through an "aiding and abetting" theory of liability. N.J. Stat. Ann. § 10:5-12(e). To

6

establish a claim for aiding and abetting under the NJLAD, a plaintiff must demonstrate that: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of defendant's role as part of an overall illegal or tortious activity at the time that he or she provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *See Cicchetti v. Morris Cnty Sheriff's Off.*, 194 N.J. 563 (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)). However, since Plaintiff has failed to sufficiently allege a predicate violation of the NJLAD as discussed above, Plaintiff's aiding and abetting claim must also fail. *See Ali v. Woodbridge Twp. Sch. Dist.*, Civil Action No. 17-2210, 2019 U.S. Dist. LEXIS 72877, at *28 (D.N.J. Apr. 30, 2019) (granting summary judgment on NJLAD aiding and abetting claim for lack of underlying NJLAD offense); *Taylor v. Lincare, Inc.*, No. 15-6284 (RMB/JS), 2016 U.S. Dist. LEXIS 91924, at *22 (D.N.J. July 15, 2016) (same). Therefore, Defendants' Motion for Summary Judgment on Count Three is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: January 9, 2024